THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ALFRED A. ARGENTINE, Appellant.

Second Department, April 2, 1979

**APPEARANCES OF COUNSEL**

*Charles M. Schutzman* for appellant.

*Denis Dillon, District Attorney (Burton T. Ryan, Jr.,* and *Anthony J. Girese* of counsel), for respondent.

**OPINION OF THE COURT**

DAMIANI, J.

On the evening of October 4, 1976 defendant was arrested on a warrant issued by the Nassau County District Court for the charge of forgery in the second degree. At that time, defendant was on parole from a 1964 sentence of 10 to 20 years' imprisonment imposed upon his conviction of the crimes of forgery and grand larceny.

In the early hours of October 5, 1976, defendant was questioned by the police and made a statement concerning the charges then lodged against him, which involved possession of a forged $1,200 check from Inter-County Shoe Repair and attempted grand larceny arising out of an unsuccessful effort to cash that check. Thereafter defendant claims that he spoke with Detective Sergeant Rinaldi of the Nassau County Police Department, who solicited his co-operation and assistance in a pending homicide investigation. On the morning of October 5, defendant was transported to Nassau County Police Headquarters, where he met with a Detective Sergeant Mangan and an Assistant District Attorney named Barry Grennan. Defendant claims that in return for his co-operation, these officials promised that the felony forgery charge would be "dropped to a misdemeanor", and that violation of parole charges would be held in abeyance and he would be restored to parole.

Defendant was then taken to the headquarters of the District Attorney's Rackets Bureau in Bethpage, where he met with Assistant District Attorney James Druker. In order to effectuate the previously agreed upon bargain, Druker called the offices of the State Department of Correctional Services in Albany, explained the conditions upon which defendant had agreed to co-operate, and obtained the consent of Inspector General McCarthy of that office to defer execution of the violation of parole arrest warrant.

In the late afternoon of October 5, defendant was arraigned in Nassau County District Court on the forgery and attempted grand larceny charges, pleaded not guilty, and was released in his own custody. Thereafter, defendant alleges that he returned to police headquarters "in order to consummate the bargained-promise." The record is unclear as to when defen-

dant performed any services on behalf of the police and District Attorney regarding the homicide investigation.

On October 6, 1976 defendant went to the Hempstead Area Parole Office, accompanied by Detective Sergeant Mangan, and was told to continue reporting to his former parole officer.

On October 7, 1976 a second felony complaint was filed against defendant charging him with the negotiation of a forged check for $53.45 allegedly taken by defendant from his former employers.

On October 8, 1976 defendant was arrested on the outstanding violation of parole warrant and was transported to the Ossining Correctional Facility where he remained until November 10, 1976, when he was returned to Nassau County. In December, 1976 defendant waived immunity and testified before the Grand Jury with respect to the alleged forgeries.

In April, 1977 defendant moved to dismiss Indictment No. 45688, charging him with criminal possession of a forged instrument in the second degree and attempted grand larceny in the third degree regarding the $1,200 check. Defendant claimed that the indictment should be dismissed because of prosecutorial misconduct in failing to honor the promise made at the time of his arrest. On May 16, 1977 Judge JOHN S. LOCKMAN denied the motion upon the ground that defendant had failed to allege that he had "performed his part of the understanding" or that he had "altered his position to his detriment in reliance upon the People's promise."

On May 27, 1977 the Nassau County Grand Jury returned Indictment No. 46246 against defendant, charging him with criminal possession of a forged instrument in the second degree. In September, 1977 defendant moved to dismiss that indictment, pertaining to the $53.45 check, and renewed his motion to dismiss Indictment No. 45688, involving the $1,200 check, upon the ground of prosecutorial misconduct in breaking the promise that he would not be prosecuted for a felony. In his motion papers defendant alleged that the police and Assistant District Attorney knew about both checks and that the District Attorney's promise encompassed both charges, despite the fact that a complaint had not been officially filed concerning the $53.45 check until October 7, 1976. The vital new evidence which defendant annexed to his moving papers was an affidavit of Detective Sergeant Mangan which had been submitted in connection with a suit instituted by defendant in Federal District Court to recover for an alleged

violation of his civil rights. In discussing the events of October 5, 1976, Detective Sergeant Mangan's affidavit stated:

"2. * * * On October 5, 1976, your deponent was informed that the plaintiff [Argentine] stated that he could assist the Nassau County District Attorney and the Nassau County Police Department in a pending homicide investigation, but requested some favorable treatment in connection with the forgery charge and the restoration to parole on the warrant which was also outstanding against him for violation of parole. When plaintiff [Argentine] volunteered to cooperate in the said homicide investigation, your deponent was then called in to the case for the first time.

"3. On October 5, 1976, JAMES DRUKER, Assistant District Attorney of Nassau County, who was also working on said homicide investigation, obtained from Mr. McCarthy, Inspector General in the Department of Correctional Services, a deferral of the execution of the New York State warrant for violation of parole, in order that plaintiff could assist in said homicide investigation, as aforementioned. Plaintiff was then wired for the purpose of obtaining information from a person who was thought to have some knowledge of said homicide, and was sent to the home of that person. It was thereafter revealed by the plaintiff that while he was at the home of said person, a telephone call was received by said person who was allegedly informed that ALFRED ARGENTINE, the plaintiff herein, was apparently working for the District Attorney or the Police Department. This placed the plaintiff in a very precarious position because of the surrounding circumstances in connection with the homicide which was being investigated. Plaintiff's usefulness to said investigation was, therefore, nullified and it was no longer advisable to keep plaintiff in a position where his safety could not be guaranteed."

The motion was referred to Judge RAYMOND HARRINGTON because Judge LOCKMAN, on defendant's motion, had disqualified himself from hearing these cases. Judge HARRINGTON summarily denied the motion, apparently upon the ground that the issue presented had previously been decided adversely to defendant by Judge LOCKMAN.

Thereafter defendant pleaded guilty to the crime of attempted criminal possession of a forged instrument in the second degree in satisfaction of both indictments. The plea minutes indicate that defendant specifically reserved his right to challenge the denial of his motions to dismiss the instant

indictments and Judge HARRINGTON stated that he was not asking defendant to waive that right. Defendant was subsequently sentenced as a second felony offender to a term of imprisonment of one and one-half to three years.

■ On appeal defendant's sole contention is that the motions to dismiss were improperly denied. The People contend that by his plea of guilty defendant waived all nonjurisdictional defects (citing *People v Bogatin,* 48 AD2d 674). In view of the fact that defendant entered his plea only after specifically reserving his right to raise on appeal the propriety of the denial of his motions to dismiss, and since the court stated that it was not asking defendant to waive that right and the People made no objection to such an arrangement, I cannot agree that the defendant's plea resulted in a waiver.

■ Turning to the merits of the case, the defendant has adduced evidence by way of the affidavits of Assistant District Attorney Druker and Detective Sergeant Mangan that a promise of leniency was made to him in return for his co-operation. Detective Sergeant Mangan's affidavit also clearly indicates that defendant was provided with a recording device, that he was sent to the home of a person suspected of having knowledge of the homicide and that this person was advised of defendant's co-operation with the police, thereby endangering defendant's safety and ending his usefulness in the investigation. In opposition to these motions the People submitted only an affirmation of an Assistant District Attorney without knowledge of the facts, who stated, on information and belief, that no promises were made to the defendant.

In my opinion, a hearing should have been held on defendant's second motion to determine whether a promise was made and, if so, its exact nature and scope. The People's bald assertion that no promise was made is controverted by the affidavits of Assistant District Attorney Druker and Detective Sergeant Mangan. These affidavits provide strong support for defendant's claim that a promise was indeed made to him and it seems highly unlikely that defendant gratuitously undertook to work with the police on the homicide investigation. If defendant's allegations of a promise are true, then ostensibly the People reneged on their "deal" with him because, although he co-operated, his efforts failed (through no fault of his own) to produce any incriminating evidence against the target of the homicide investigation. According to Detective Sergeant Mangan's affidavit, defendant did all he was asked to

do and was admittedly "placed * * * in a very precarious position" when his co-operation with the police was discovered. The fact that defendant's services failed to produce results is not determinative for, as the Court of Appeals said in *Matter of Chaipis v State Liq. Auth.* (44 NY2d 57, 65): "Where those services have been significant, *or have involved considerable risk or sacrifice on the defendant's part,* failure to enforce the promise might do substantial injustice, not only to the defendant but to the public which is entitled to have the benefit of future co-operation, and is to be avoided" (emphasis added).

Fairness dictates that if defendant exposed himself to danger on the People's behalf, he is entitled to have the alleged promise made to him enforced. Accordingly, the instant appeal should be held in abeyance and the case remitted to the County Court, Nassau County, for a hearing to determine (1) whether a promise was made to defendant to gain his co-operation, (2) if so, the exact nature and scope of the promise, including whether it was intended to cover one or both forgery charges and (3) whether defendant performed services in reliance upon the promise which exposed him to danger.

MOLLEN, P. J., TITONE and SUOZZI, JJ., concur.

Case remitted to the County Court, Nassau County, to hear and report on the issues set forth in the opinion herein, and appeal held in abeyance in the interim. The County Court is to file its report with all convenient speed.